# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DENNIS WILLIAMS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 4:14-cv-01298-JHE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION[1]

Plaintiff Dennis Williams, Jr. seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). (Doc. 1). Williams timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Williams was a thirty-nine year old male at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 53, 169). Williams has a high school education and past relevant work as a carpenter, construction laborer, and forklift operator. (Tr. 183, 192-99).

Williams filed his application SSI in November 2010, alleging back problems, numbness

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 16).

in the extremities, and depression. (Tr. 169-77, 182). The Agency initially denied Williams' application, and Williams requested a hearing before an ALJ. (Tr. 110, 119-24, 127-29). After a hearing, the ALJ denied Williams' claim on August 21, 2012, finding Williams "not disabled." (Tr. 53-67, 71-103). Williams sought review by the Appeals Council, but it declined his request on May 7, 2014. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On July 7, 2014, Williams initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Williams had not engaged in substantial gainful activity since the application date, November 30, 2010. (Tr. 58). At Step Two, the ALJ found Williams has the following severe impairments: lumbar degenerative disc disease. (Tr. 59). At Step Three, the ALJ found Williams does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 62).

Before proceeding to Step Four, the ALJ determined Williams' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Williams has the RFC to perform sedentary work that allows him to sit for up to two hours at one time, alternate between sitting and standing at will, and for a temperature-controlled environment; Williams should not use his upper extremities or left lower extremity for push or pull movements; he should not bend, stoop, or climb on more than an occasional basis; he should not drive or work from unrestricted heights. (Tr. 62).

4

At Step Four, the ALJ determined Williams is unable to perform any past relevant work. (Tr. 65). At Step Five, the ALJ determined, based on Williams' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Williams could perform. (Tr. 66). Therefore, the ALJ determined Williams had not been under a disability, as defined under the Social Security Act, and denied Williams' claim. (Tr. 67).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Williams offers the following specific "errors of law" in support of his appeal, contending (1) the ALJ improperly rejected the opinions of Dr. Wilson (psychologist consultant) and Dr. Iyer (medical consultant) and substituted his opinion; (2) Williams meets Listings 1.04 (spine), 12.04 (affective disorders), 12.06 (anxiety disorders); (3) the ALJ erred at Step Two when he found that Williams' depression was not severe and at Step Four when he failed to account for mental limitations in the RFC; (4) the ALJ failed to state adequate reasons for finding Williams not credible; and (5) the ALJ's decision was not based on substantial evidence, particularly arguing the ALJ improperly relied on the vocational expert's testimony at Step Five. (Doc. 12 at 5). The undersigned addresses each of these issues below, and further finds each of the Commissioner's findings to be supported by substantial evidence.

> 1. Whether the ALJ improperly rejected the opinions of Dr. Wilson or Dr. Iyer and substituted his opinion without valid explanation.

Williams contends the ALJ improperly rejected the opinions of Dr. Wilson, a psychologist consultant, and Dr. Sathyan Iyer, a medical consultant, and substituted his opinion. (*See* doc. 14 at 4-5). On February 11, 2011, Dr. Iyer performed a consultative medical examination of Williams at the request of the Commissioner. (Tr. 2574-79). Dr. Iyer found: (1) lower back pain secondary to degenerative joint and disc disease; (2) left lower extremity radiculopathy secondary to lumbar disc disease; (3) status post two surgeries over the lower back for herniated disc at L5-S1; (4) history of depression; and (5) possible DJD left hip. (Tr. 277). He further commented that, "[i]n his current condition, [Williams] may have impairment of functions involving sitting[] and standing for long periods, bending, lifting, climbing, pushing foot pedals and carrying." (*Id.*). The ALJ acknowledged this examination, expressly giving it "some weight." (Tr. 65). The ALJ noted that Dr. Iyer's opinions regarding limitations of function imposed are "non-specific." (*Id.*). The basis of Williams' argument regarding the ALJ substituting his judgment for that of Dr. Iyer is unclear. Not only are Dr. Iyer's opinions in fact "non-specific," as the ALJ noted, but Williams fails to show how Dr. Iyer's opinion is more restrictive than the ALJ's finding. The ALJ found Williams limited to sedentary work with a sit/stand option with no use of his arms or left leg for pushing and pulling movements and no more than occasional bending, stooping, or climbing. (Tr. 62). This appears consistent with Dr. Iyer's opinions.

The ALJ expressly noted that he was aware of the consultative psychological report prepared by Dr. David Wilson, but "consider[ed] it to be inconsistent with the other evidence of record" and noted that the report and opinions "are based on a one-time evaluation and not a

longitudinal history of treatment for mental problems."[4]  (Tr. 65).   Dr. Wilson concluded that Williams was "very depressed about not being able to work or do other things, or to support himself financially" and that he appeared "to be the type of person who would certainly be working if he could."  (Tr. 285).  Dr. Wilson concluded that his major depression "would also interfere with his ability to perform work–he would have difficulty with most any job because of his depression."  (*Id.*).  Despite Dr. Wilson's conclusions, the ALJ found Williams' depression did not cause more than a minimal limitation on his ability to perform basic work activities and was therefore "non-severe."  (Tr. 60).

In February 2011, based on a review of the record, including Dr. Wilson's report,[5] Dr. Robert Estock completed a Psychiatric Review Technique and a Mental RFC Assessment.  (Tr. 286-303).  Dr. Estock opined Williams could understand and remember simple instructions, maintain sufficient attention to complete simple tasks, work with coworkers and the general public in a casual manner, and adapt to gradually introduced, well-explained changes.  (Tr. 302).  Although these limitations are not listed in the RFC, the jobs identified by the vocational expert, which were all unskilled, do not exceed these proposed limitations. Williams fails to show how the ALJ improperly weighed these opinions or substituted his judgment.[6]

---

[4] Dr. Wilson's May 2013 psychological evaluation relates to Williams' condition at a time after the ALJ's decision and is not chronologically relevant.  *See Watkins v. Astrue*, 925 F. Supp. 2d 1257, 1263 (N.D. Ala. 2013) (citing 20 C.F.R. § 404.970(b)) ("It is chronologically relevant if 'it relates to the period on or before the date of the [ALJ] hearing decision.'").  Therefore, the Appeals Counsel correctly decided not to consider this evidence when denying review.  (Tr. 1-7).  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)) ("The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

[5] Williams' argument that Dr. Estock's opinion is "invalid" because he did not consider Dr. Wilson's report is without merit.  Dr. Estock specifically referenced Dr. Wilson's report when he completed the form.  (Tr. 298).

[6] In a supplemental filing, Williams directs the court's attention to the recently decided

7

> 2. Whether the ALJ erred when he found that Williams' impairments do not meet any of the Listings.

Williams next argues the ALJ erred at Step Three because his impairments meet Listings 1.04 (spine), 12.04 (affective disorders), and 12.06 (anxiety disorders). (Doc. 12 at 30-42). To meet a listing, Williams must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings as well as the duration requirement of twelve consecutive months.  20 C.F.R. § 416.925(a)-(d), *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  He must "show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> Listing 1.04 states, in relevant part, as follows:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral facture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.  With:
>
>> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion in the spine, motor loss (atrophy with associated weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Although the record indicates Williams has undergone two back surgeries, one in May 2008 and one in March 2009, the progress notes do not document any consistent clinical abnormalities required by Listing 1.04 satisfying the

---

*McClurkin v. Soc. Sec. Admin.*, -- Fed. Appx. --, 2015 WL 5166045 (11th Cir. Sept. 4, 2015), stating that it reversed and remanded the claim because the ALJ failed to clearly articulate either the weight given to the physician's opinion or the grounds for discounting the report from the physician. (Doc. 17).  Here, the ALJ clearly stated the weight given to Dr. Wilson and Dr. Iyer's opinions and the reasons therefor.

durational requirement of twelve consecutive months. Instead, the progress notes generally show no consistent motor loss with muscle weakness and no sensory or reflex loss. (Tr. 342, 344-45, 347, 349, 361, 363, 365, 373-74). For example, on February 5, 2011, Dr. Iyer examined Williams at the request of the state agency and reported Williams had no motor or sensory deficits and normal reflexes. (Tr. 277).

In his brief, Williams merely sets forth the progress notes and concludes that his impairment meets the Listing without any significant explanation, stating "[t]he evidence clearly supports a finding of disability under [this Listing] with two herniated discs, spinal stenosis, and severe left lower extremity radiculopathy. (Doc. 12 at 30-40) (citation to record omitted). Although the evidence may demonstrate the disorder described in Listing 1.04, Williams has not shown that the record contains evidence illustrating the consistency and duration required.

Listing 12.04 pertains to affective disorders and Listing 12.06 pertains to anxiety-related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The required level of severity is met when the claimant meets the requirement in subsection A and the requirements of either subsection B or C of the Listing. *See id.* Subsection B requires the claimant have a level of severity showing a least two of the following: (1) marked restriction in activities of daily living; (2) marked restriction in social functioning; (3) marked restriction in concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Subsection C requires findings such as repeated episodes of decompensation or the inability to live outside a supportive living arrangement.

There is nothing in the record to indicate Williams was diagnosed with an anxiety-related disorder,[7] and although Williams was diagnosed with an affective disorder, i.e., depression, a

---

[7] As previously noted, Williams' additional evidence submitted to the Appeals Counsel is not chronologically relevant to this claim, which addresses his condition from November 30, 2010 to August 21, 2012.

diagnosis alone is insufficient to satisfy the criteria of a listing impairment.  *See* 20 C.F.R. § 416.925(d).  Williams sets forth no discernable argument as to how his impairments meet or equal these listings.  In evaluating the evidence, the ALJ made the following findings: Williams had mild restriction in activities of daily living, mild difficulties in social functioning, mild limitations with regard to concentration, persistence or pace; and no episodes of decompensation.  (Tr. 61).  Williams points to no evidence that he had at least two of the required criteria.  Dr. Estock reviewed the record in February 2011, including Dr. Wilson's evaluation, and did not indicate that Williams' impairments met a listing.  (Tr. 286).

> 3. Whether the ALJ erred when he found that Williams' depression was not "severe" and when he failed to account for mental limitations in his RFC.

Williams next contends the ALJ erred in finding that Williams' depression was not severe and in failing to account for mental limitations when delineating his RFC.  (Doc. 12 at 43-47).  After the ALJ acknowledged Williams had a severe impairment, i.e., lumbar degenerative disc disease at Step Two, he found in Williams' favor and proceeded to the next step of the sequential evaluation process.  (Tr. 62-66).  As the Eleventh Circuit has stated:

> [T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied.  Indeed, since the ALJ proceeded beyond step two, any error in failing to find the [claimant] suffered from [] additional severe impairments . . . would be rendered harmless.

*Packer v. Comm'r, Soc. Sec. Admin.*, 524 Fed. Appx. 890, 892 (11th Cir. 2013).  Thus, the ALJ's alleged failure to find an additional severe impairment is not reversible error.

Moreover, contrary to Williams' argument, the ALJ discussed Williams' depression.  The ALJ found that Williams' depression did not result in more than minimal limitation in his ability to perform basic mental work activities.  (Doc. 60).  In reaching this finding, the ALJ discussed the record evidence, noting lack of treatment.  Williams points to a psychiatric review technique

form that shows Dr. Estock indicated Williams had organic mental and affective disorders. (Tr. 286-99). This diagnosis, however, says very little about the severity of any impairment. Furthermore, Dr. Estock specifically found Williams could understand and remember simple instructions, maintain sufficient attention to complete simple tasks for two hour periods through an eight-hour workday, handle casual contact with coworkers and the general public, and adapt to gradually introduced, well-explained changes. (Tr. 302). He further found that Williams was either "not significantly limited" in most areas assessed during his mental residual functional capacity assessment. (Tr. 300-01). The most severe limitation Dr. Estock marked was "moderately limited" and only when assessing Williams' ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to interact appropriately with the general public; ability to accept instructions and response appropriately to criticism from supervisors; and ability to response appropriately to changes in the work setting. (*Id.*). The jobs the ALJ found Williams could perform, based on the vocational expert's testimony, consist of unskilled work. (Tr. 67, 96-97). Unskilled work is work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. § 416.968(a). The jobs the vocational expert identified included jobs that did not involve significant contact with people. Thus, to the extent the record may have supported any work-related limitations based on mental impairments, those limitations do not preclude Williams from performing the unskilled worked the vocational expert identified. The ALJ did not commit reversible error, as the ALJ properly considered Williams' impairments.

    4. Whether the ALJ stated adequate reasons for finding Williams not entirely credible.

Williams also argues the ALJ did not properly evaluate his subjective allegations of

disabling pain and that the reasons the ALJ sets forth are not sufficient.  (Doc. 12 at 47-54).  The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability.  *Id*.  However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain.  *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62.  An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence.  *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

Williams points to his hearing testimony and argues that it is supported by the medical evidence and satisfies the pain standard sufficient to support a finding of disability.  (Doc. 12 at 47).  Williams does not specify the objective evidence he contends supports his allegations of disability; he only refers to his hearing testimony.  (*See id.* at 47-54).  This is insufficient to demonstrate reversible error.  To the contrary, a review of his decision shows that the ALJ gave "great weight" to the opinions of Williams' treating physician, Dr. Jay Jolley, largely based on the nature and extent of their treating relationship.  (Tr. 65).  The ALJ also noted Williams did

not complain of side effects from his medication, had no consistent clinical findings typically associated with disabling pain, sought only intermittent treatment, and further noted that he was aware of Williams' activities. (Tr. 61, 64-65). Contrary to Williams' argument, the ALJ offered legitimate reasons supported by the record in finding Williams not fully credible, and substantial evidence supports this credibility finding. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (stating that credibility determinations are the province of the ALJ); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (stating that the court will not disturb a clearly articulated credibility finding supported by substantial evidence).

Furthermore, substantial evidence supports the ALJ's RFC finding that Williams could perform a range of sedentary work. (Tr. 62-65). The ALJ noted that although Williams underwent back surgery in May 2008 and in March 2009, his surgeon restricted Williams to sedentary work after surgery and increased his ability to light work in July 2009. (Tr. 64, 352, 366, 405). In May 2008, Dr. Jolley indicated Williams should be off of work for two weeks after surgery and then should be restricted to sedentary work. (Tr. 366). In April 2009, Dr. Jolley restricted Williams to sedentary work with no lifting of more than ten pounds. (Tr. 352). In July 2009, Dr. Jolley restricted Williams to lifting up to fifty pounds occasionally, twenty-five pounds frequently, and up to ten pounds constantly. (Tr. 405). The ALJ accorded great weight to Dr. Jolley's opinions given the nature and extent of the treating relationship. (Tr. 65).

The ALJ further noted the objective findings from progress notes failed to support Williams' allegations of a disabling condition and further noted Williams reported no side effects from his medication. (Tr. 64). The ALJ noted Williams' activities, which included preparing his own meals, driving, grocery shopping, walking one hour a day, and washing dishes. (Tr. 61, 83, 200).

The ALJ also gave some weight to Dr. Iyer's opinion, the consultative examiner who saw Williams on February 5, 2011. (Tr. 65). Dr. Iyer opined that Williams "may" have an impairment of function involving sitting, standing for long periods of time, bending, lifting, climbing, pushing, foot pedals, and carrying. (Tr. 277). As thoroughly addressed above, the ALJ did not improperly substitute his opinion for that of Dr. Iyer, but gave it some weight, as it was "not-specific." (Tr. 65).

Considering the record as a whole, the ALJ properly found Williams could perform a range of sedentary work. Substantial evidence supports his RFC and credibility findings. Williams offers no basis for reversal.

      5. Whether the ALJ's Step Five analysis is based on substantial evidence

Williams also contends the ALJ's decision is not based on substantial evidence because the ALJ relied on the vocational expert's testimony, which was not based on a correct or full statement of the claimant's limitations and impairments. (Doc. 12 at 54-56). Specifically, Williams points to the vocational expert's testimony that to do certain jobs, Williams would have to stand for two hours at a time with a fifteen minute break and then two hours more. (Tr. 95-96, 98). However, this line of questioning was based on the ALJ's first hypothetical in which he limited Williams to light wok, not sedentary work. (Tr. 95-98). The ALJ ultimately limited Williams to a range of sedentary work and relied on subsequent testimony from the vocational expert. (Tr. 62, 98).

The vocational expert explained that jobs he identified in response to a limitation to sedentary work, the assembly job and the optical goods assembler job, would be primarily performed in a seated position and would require two hours, and the order clerk might allow for a sit/stand option. (Tr. 98). The ALJ limited Williams to a range of sedentary work that allowed

him to sit for up to two hours at a time. (Tr. 62). Thus, the ALJ properly relied on the vocational expert's testimony to find Williams could perform a significant number of other jobs in the national economy and was not disabled. (Tr. 65-67, 96-97). Substantial evidence supports the ALJ's Step Five analysis.

As previously stated, substantial evidence supports the ALJ's Step Two, Step Three, and Step Five findings, as well as his findings regarding Williams' RFC and credibility. Accordingly, the undersigned finds no reversible error and that each of the Commissioner's findings are supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Williams' SSI claim is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 29th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE